IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01679-WYD-MJW

VIJAYKRISHNA ANDALAM,

       Plaintiff,

v.

THE TRIZETTO GROUP, a Delaware Corporation doing business as a foreign
Corporation in Colorado,

       Defendant.

---

## ORDER

---

I.   <u>INTRODUCTION</u>

     Plaintiff Vijay Andalam initiated this action under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.* claiming that his former employer, the TriZetto Group,

Inc. ("Defendant" or "TriZetto"),[1] discriminated against him on the basis of race and

national origin.  Plaintiff also asserts claims of retaliation and hostile work environment

in violation of Title VII.  Plaintiff is Indian and his national origin is East Indian.

     This matter comes before the Court on Defendant's Motion for Summary

Judgment (ECF No. 66) filed September 4, 2013.  Defendant claims that Plaintiff cannot

establish a prima facie case of race or national origin discrimination and also claims that

it had legitimate non-discriminatory reasons for terminating Plaintiff's employment.

Based on my review of the pleadings and relevant record, I find that material issues of

---

[1] The TriZetto Group, Inc. is a company that is in the business of delivering
information technology solutions to assist healthcare organizations work efficiently and
collaboratively to deliver better healthcare to patients across the country.

fact preclude summary judgment on Plaintiff's claims.  Defendant's motion is therefore denied.

II.   <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Equal Employment Opportunity Comm'n. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).  A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence.  *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505.  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Id.* at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th

Cir. 2008).  Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which he or she carries the burden of proof.  *Nat'l Am. Ins. Co. v. Am. Re–Ins. Co.*, 358 F.3d 736, 739 (10th Cir. 2004); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As to these matters, the nonmoving party may not rest on his or her pleadings but must set forth specific facts.  Fed. R. Civ. P. 56(e)(2); *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348; *Justice*, 527 F.3d at 1085.

III.   FACTUAL BACKGROUND

Plaintiff is from India, however, he has lived in the United States since 1996.  On September 10, 2009, Plaintiff began working for TriZetto as a contractor, but on September 30, 2009, he was hired as a full-time employee to be TriZetto's Lead Software Engineer.  While at TriZetto, Plaintiff was supervised by Matt Robinson. Although the parties recall conflicting versions of the events leading up to Plaintiff's firing, it is undisputed that on April 19, 2011, TriZetto terminated Plaintiff's employment.

Discrimination Claim

Plaintiff asserts that he suffered adverse employment actions when TriZetto both denied him training opportunities on numerous occasions and eventually terminated his employment.  Plaintiff testified that each adverse employment action was accompanied by a racial slur from Robinson.  Plaintiff asserts that in 2010, Robinson provided training classes to other Caucasian employees while denying Plaintiff's training requests because he is Indian.  When his employment was terminated, Plantiff was the only

Indian in the department.

Retaliation Claim

Plaintiff testified that in January 2010, Robinson began discriminating against him by: (1) denying him training opportunities, (2) denying his requests for a blackberry, and (3) excluding him from work-related meetings because he is Indian.  Plaintiff complained to Robinson's supervisor, Carl Wilson, about the alleged acts of discrimination.  In March 2011, Plaintiff participated in TriZetto's human resource department's investigation of his allegations of discrimination.  As part of an agreement made during a meeting with Plaintiff and human resource ("HR") representatives, Plaintiff was enrolled in his requested online Oracle training course from Monday, March 28, 2011 through Friday, April 1, 2011.  TriZetto secured a conference room for Plaintiff to take the online course.  There is a genuine dispute as to whether the course started at 8:00 a.m. or 9:00 a.m. each day and whether Plaintiff attended and completed the course.  Plaintiff received a certificate of completion and submitted a class survey following the course.

On April 8, 2011, an HR representative and Robinson met with Plaintiff to discuss their concern that he had been taking lunch breaks in excess of one hour.  TriZetto described the excessive lunch breaks as "symptomatic of a broader problem of Plaintiff being inaccessible during working hours."  (Mot. at 10).  In addition to discussing Plaintiff's absenteeism, HR representatives and Robinson "also discussed that they and others had repeatedly observed Plaintiff using the internet for personal reasons during working hours."  (Mot. at 11.)  "Consequently, they decided to request that TriZetto's

Information Security Department run an Internet Usage Report on Plaintiff's work computer." (Mot. at 11).  On April 18, 2011, HR representatives, Robinson, and Robinson's supervisor Carl Wilson "met again to discuss the findings of the Internet Usage Report," which "revealed Plaintiff's excessive personal use of the internet on his work computer during working hours in violation of TriZetto's Acceptable Use Policy." (Mot. at 12).  Plaintiff vigorously disputes the contents of the report and challenges its accuracy.

Plaintiff's employee evaluations never reflected that he was excessively absent from his job or that he had any issues performing work functions.  On March 14, 2011, 34 days before TriZetto terminated his employment, Robinson gave Plaintiff a positive review, stating "Vijay has performed above expectations this year as the Technology Lead for Oracle" and "Vijay works at a very high level . . . and keeps project tasks, software enhancements and break-fix requests moving through the queue." (Resp. at 18).  On April 19, 2011—approximately one month after his initial contact with the EEOC and his participation in HR's internal investigation—Plaintiff was fired.

EEOC Contact

In March 2011, Plaintiff initially contacted the EEOC and spoke with an investigator about his allegations of psychological harassment and bullying and whether his rights were being protected.  On April 19, 2011, following his termination from TriZetto, Plaintiff again went to the EEOC to initiate a complaint of discrimination.  On May 23, 2011, Plaintiff filed an EEOC charge which alleged discrimination based upon

race and national origin.[2]  Highly summarized, Plaintiff asserted that prior to March 7,

2011 and continuing until his discharge on April 19, 2011, he was subjected to

psychological harassment and bullying.  On March 7, 2011, he was denied training due

to budget concerns when other non-Indian and/or East Indian employees received the

budget funds to take their requested training classes.  On March 9, 2011, Plaintiff

alleged that Robinson shouted at him, insulted him, and threatened to terminate his

employment in the presence of his co-workers.  (ECF No. 115-22).

On June 27, 2012, Plaintiff filed this lawsuit.

IV.    ANALYSIS

A.    Whether Summary Judgment is Proper on Plaintiff's Race and National
      Origin Discrimination Claim

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating

against employees and applicants for employment on the basis of race, color, religion,

sex, or national origin.  42 U.S.C. § 2000e-2(a)(1).  To state a valid claim under Title VII,

a plaintiff must prove by a preponderance of the evidence that the employer engaged in

intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

 "A plaintiff alleging discrimination on the basis of race or national origin may prove

intentional discrimination through either direct evidence of discrimination (e.g. oral or

written statements on the part of a defendant showing a discriminatory motivation) or

indirect (i.e. circumstantial) evidence of discrimination."  *Kendrick v. Penske*

*Transportation Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  When a plaintiff

---

[2] Plaintiff supplemented his formal Charge of Discrimination with documentation to more fully support his allegations.

-6-

does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Perry v. Woodward*, 199 F3d 1126, 1135 (10th Cir. 1999).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *Hicks*, 509 U.S. at 504. When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to present evidence that it had a legitimate nondiscriminatory reason for its action. *Id.* at 802-03. If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523 (10th Cir. 1995).

Here, for purposes of the motion for summary judgment, Plaintiff offers no direct evidence that TriZetto discriminated against him on the basis of race or national origin. Instead, Plaintiff relies on circumstantial evidence to prove TriZetto's discriminatory intent. Thus, Plaintiff employs the *McDonnell Douglas* burden shifting analysis where he bears the initial burden of establishing a prima facie case of discrimination.

To meet his burden of establishing a prima facie case of discrimination on the basis of race or national origin, a plaintiff must demonstrate that: (1) he is a member of

a protected class; (2) he suffered an adverse employment action; and (3) the action took place in circumstances which give rise to an inference of discrimination. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 n. 4 (10th Cir. 2013) (noting that the Tenth Circuit prefers the more recent three-part variation of this test as articulated by the Supreme Court in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)).  As to the first element, Plaintiff, an Indian from India, belongs to a protected class.  As to the second and third elements, Defendant argues that it is entitled to summary judgment because Plaintiff cannot show that the denial of training was an adverse employment action nor that any such action occurred under circumstances which give rise to an inference of discrimination.

For purposes of a discrimination claim, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007). The Tenth Circuit liberally defines an adverse job action. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998).  Court must take a "case by case approach" analyzing the "unique factors" present in each situation. *Id.* Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive, including preferential treatment of employees outside the protected class. *See Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).

Here, Plaintiff claims that 18 months of training denials rendered him unqualified for his current position in light of Defendant's planned software upgrades and

advancements.  Plaintiff specified the nature of the Oracle E-business training class he repeatedly requested and how it would impact his ability to perform in his current position as a lead software engineer.  *See Belgasem v. Water Pik Technologies, Inc.*, 457 F. Supp. 2d 1205, 1215 (D.Colo. 2006 ) (finding that an employer's act must be "materially adverse to the employee's job status.").  For purposes of the motion for summary judgment, I find that Defendant's denial of Plaintiff's repeated requests to take the Oracle training class constitutes an adverse employment action.

As to the third element, Defendant asserts that Plaintiff cannot show a nexus between the training denials or his termination and his race or national origin.  It is undisputed that Plaintiff was qualified for his position as Lead Software Engineer. Interestingly, just one month prior to terminating Plaintiff's employment, Defendant gave Plaintiff a positive employee evaluation lauding his leadership and high performance level.  I find these circumstances coupled with the alleged racial comments made by Robinson demonstrate the necessary inference required to establish Plaintiff's prima facie case of race and national origin discrimination.

The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decisions to both deny Plaintiff his requested training class and eventually terminate his employment.  *See McDonnell Douglas*, 411 U.S. at 802.  Here, Defendant contends that budget constraints precluded the initial authorization of the Oracle training class and the fact that once the training class was approved, Plaintiff failed to complete the course.  Defendant also claims that Plaintiff's excessive absences and violation of TriZetto's internet Acceptable Use Policy led to the termination of his employment.  I

find that these are nondiscriminatory reasons, therefore, the burden shifts to Plaintiff to show that the proffered reasons were merely a pretext for discrimination. *Id.*

Generally, a plaintiff shows pretext in one of three ways: (1) with evidence that the defendant's stated reasons for the adverse employment action were false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. *Plotke v. White*, 405 F.3d 1092, 1102-03 (10th Cir. 2005) (internal citations omitted). A plaintiff's evidence can also allow for an inference that the "'employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).'" *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994)). Evidence of pretext may also include the use, by the employer, of subjective criteria in its employment decision. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217-18 (10th Cir. 2002) (internal citations omitted).

The record reveals genuine issues of material fact regarding pretext. First, Plaintiff alleges that Robinson, one of the individuals who terminated him from his employment, made comments to him which a reasonable jury might find discriminatory. A jury might reasonably find that the alleged comments related to Plaintiff's race, national origin, or both. Moreover, despite that fact that Defendant has identified Plaintiff's attendance both during the training class and thereafter as a legitimate

nondiscriminatory reason for termination, Plaintiff testified that he did in fact complete the course and receive a certificate of completion.  While Defendant disputes the meaning and validity of the certificate, I find that this is an appropriate issue of fact for a jury to consider.  Also, Plaintiff maintains that he was present at his job during the hours that he and HR representatives agreed upon when they met following his allegations of discrimination.  Finally, Plaintiff asserts that while his training requests were denied for 18 months, other employees outside the protected class received training.  Viewing this evidence in a light most favorable to Plaintiff, I find that Defendant's proffered non-discriminatory reasons are pretextual due to weaknesses, inconsistencies, and contradictions.  Accordingly, the motion for summary judgment on Plaintiff's claim for race and national origin discrimination is denied.

      B.    <u>Whether Summary Judgment is Proper on Plaintiff's Retaliation Claim</u>

      Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  Here, because Plaintiff again relies on circumstantial evidence in support of his retaliation claim, it is subject to the three-step *McDonnell Douglas* burden shifting analysis.  To establish a prima facie case of retaliation, a plaintiff must demonstrate that a genuine issue of fact exists as to each of the following elements*:* "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."  *O'Neal v. Ferguson Construction Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001); *Khalik v. United Air Lines*, 671

F.3d 1188, 1193 (10th Cir. 2012); *Argo v. Blue Cross & Blue Shield*, 452 F.3d 1193, 1202 (10th Cir. 2006). After a plaintiff makes a prima facie showing, a defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Plaintiff must respond by demonstrating a defendant's asserted reasons for the adverse action are pretextual. *Id.*

Until recently, a plaintiff could establish causation by showing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed by adverse action. However, in *Univ. of Tex. SW. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct 2517, 2533 (2013), the Supreme Court held that similar to ADEA claims, "Title VII retaliation claims must be proved according to the traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Plaintiff asserts that Defendant retaliated against him for complaining about the discriminatory acts to both Robinson's superiors and TriZetto's HR department and contacting the EEOC. I find that Plaintiff satisfies the requirements of a prima facie case of retaliation. Plaintiff complained of the alleged discrimination to his superiors and participated in TriZetto's HR department's internal investigation. Plaintiff also states that while he participated in TriZetto's internal investigation, he informed the Defendant that he contacted the EEOC to determine whether his rights were being protected, which qualifies as protected opposition to discrimination. In early March 2011 and on March 10, 2011, Plaintiff complained to Robinson's supervisors that Robinson had

repeatedly denied him training and harassed him because of his race and national origin.  From March 12, 2011 to March 22, 2011, Plaintiff participated in TriZetto's internal investigation.  Approximately one month later, on April 19, 2011, Plaintiff's employment was terminated.  I find that the close temporal proximity between Plaintiff's participation in the internal investigation — approximately one month — is sufficient to establish a genuine issue of material fact that but for Plaintiff's complaint of discrimination and his participation in TriZetto's internal investigation, Defendant would not have terminated Plaintiff's employment.

With respect to the second step in the *McDonnell Douglas* analysis, I find Defendant articulated legitimate, non-retaliatory reasons for both denying Plaintiff's training requests and ultimately terminating his employment.  Applying the final step in the *McDonnell Douglas* analysis, for reasons stated above, I find genuine issues of fact exist as to whether the legitimate, non-retaliatory reasons asserted by Defendant for Plaintiff's denial of training and employment termination give rise to an inference of pretext.  Moreover, Plaintiff had no prior history of disciplinary problems at TriZetto and had just received a positive performance review approximately one month prior to his firing.  Therefore, Plaintiff's retaliation claim survives summary judgment.

C.    Whether Summary Judgment is Proper on Plaintiff's Claim for Supervisory Harassment/Hostile Work Environment

"Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986).  To survive summary judgment on a claim alleging

a racially hostile work environment, a plaintiff must establish that a rational jury could find that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1096 (10th Cir. 2005). The Tenth Circuit has held that the "severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact." *O'Shea v. Yellow Technology Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).

As previously outlined in this Order, Plaintiff asserts that his immediate supervisor routinely directed racial slurs at Plaintiff. Thus, I find that Plaintiff has shown sufficient evidence for a rational jury to conclude that Plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Chavez*, 396 F.3d at 1096. Further, after construing both Plaintiff's May 23, 2011 Charge of Discrimination along with his supplemental documentation, I find that Plaintiff sufficiently exhausted his complaint of a hostile work environment in his EEOC charge. *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998). Accordingly, Plaintiff's hostile work environment claim survives summary judgment.

V.   <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 66) is

**DENIED**.

Dated:  March 20, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-15-